### Dan Baldino, Defendant in Error, v. Rose Henneberry, Plaintiff in Error.

### Gen. No. 19,545.   (Not to be reported in full.)

Error to the Municipal Court of Chicago; the Hon. JOSEPH E. RYAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Reversed and remanded. Opinion filed February 4, 1915.

### Statement of the Case.

Action by Dan Baldino against Rose Henneberry for a commission for procuring a purchaser for real estate. From a judgment against defendant for $625 in favor of plaintiff, defendant brings error.

In 1910 defendant listed an apartment building and a cottage in Chicago with several real estate brokers, including the plaintiff, to sell and the price named was $30,000. Plaintiff put the price on a card, placed the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

card among his office files, and submitted the property to several prospective purchasers, without result. In 1911 the cottage was sold by the defendant, and thereupon the price for the apartment building was reduced to $26,000. This fact was communicated to the plaintiff and he noted it on the card in his office. The plaintiff testified that about that time, one Joe Viviano, a dealer in macaroni, living in Chicago, told the plaintiff he was looking for a building for his brother, Sam (or Salvatore) Viviano, who, at that time, lived in St. Louis, Missouri; that plaintiff and his salesman showed Joe Viviano several pieces of property, including that of the defendant, and that Joe Viviano then said he could do nothing until his brother came to Chicago. Joe Viviano testified that plaintiff showed him "many properties"; that he wanted "to buy me and my brother together a residence property" and that when plaintiff pointed out defendant's building to him, "I say it is not the house that we want— it don't suit us, this place." He denied that he acted as his brother's agent, and denied that he ever told plaintiff that such was the fact. Sam Viviano arrived in Chicago early in the year 1912. Plaintiff claims that he then called upon him and asked him whether his brother Joe had spoken to him about "that corner I showed him"; that on receiving a reply in the negative, the plaintiff made an appointment to show him the property, and that the next day he did "show" him the property, by driving him around in a buggy and pointing out three pieces of property, one of which was that of the defendant. The plaintiff also claims that on another occasion, in the summer of 1912, he walked with Sam Viviano to the defendant's property and again called his attention to it, from the sidewalk. He admitted that he never took either of the Vivianos inside the building, at any time. Nothing came of these efforts on the plaintiff's part to sell the property.

The plaintiff did not report any of these facts to the defendant, and, apparently, nothing further was done by him towards effecting a sale to either of theVivianos until after he learned that Sam Viviano had been induced by another broker, a woman named Mrs. Emily Badali, to examine the property, as hereinafter stated.

The defendant was out of the city from June, 1912, until October 7, 1912. In September, 1912, Mrs. Badali, who was acquainted with Mrs. Sam Viviano, was endeavoring to sell her some property on Congress street, and while returning from a visit to that property met one of the defendant's tenants on the street. In talking to him they learned that defendant's property was for sale. They went to the building and looked through one of the flats. The next day they sought the defendant's son, who took them through the building. A few days later, at Mrs. Badali's instance, both Mrs. Viviano and her husband examined the property. This was the first time he had seen the inside of the building, and soon after he made a further examination with the assistance of a contractor and plumber, whom he employed for that purpose. Some negotiations followed with the son of the defendant, and later, upon her return to the city, with the defendant in person, which resulted in the defendant's accepting an offer of $25,000 made by Viviano. A written contract to that effect was prepared by Viviano's lawyer on October 12, 1912, but owing to some dispute about "pro-rating" taxes and other small matters it was not signed until October 15, 1912.

The plaintiff testified that on October 6th or 7th he called on the defendant and told her that he had a customer named Viviano, who would pay $24,500 for the property, and that the defendant replied that she would not take less than $25,000. He did not claim that he ever mentioned Viviano's name to the defendant prior to that time. The defendant and her daughter both testified that the defendant did not return to the city until October 7th; that the next day after she returned,

Sam Viviano and Mrs. Badali called at defendant's house, and again a day or two later, as above stated, and that it was not until after their second visit— which was on October 9th or 10th—that the plaintiff made the visit he claims he made on October 6th or 7th. On October 13, 1912, plaintiff wrote a letter to the defendant, saying that he had had "a long talk with Viviano Bros."; that "he" had said "he" would not pay over $25,000, and that the plaintiff had told "him" that defendant would not consider less than $25,500; that "this property has been submitted to these people out of my office in the last year or so"; that "one of their brothers accompanied the man I had working for me at the time," who "took them over and showed the property, but he did not take them through"; that "they were not taken through the building because you were away"; and that he understood from Viviano that "there is a girl between the deal." The letter concludes by asking defendant to let him know "the lowest price on the property." This letter was received by defendant after the contract had been prepared, but before it was signed. She gave the letter to her lawyer. After taking from Sam Viviano an affidavit as to the facts, the sale was consummated on October 24, 1912, and defendant paid a full commission to Mrs. Badali. Plaintiff based his action on the theory that he had found a purchaser who was accepted by the defendant.

James S. Deming and D. I. Jarrett, for plaintiff in error; Thomas J. Young, of counsel.

Miles J. Devine and John T. Murray, for defendant in error.

Mr. Presiding Justice Fitch delivered the opinion of the court.

## Abstract of the Decision.

1.  Brokers, § 29*—*compensation where several brokers.*   Where
an owner of real estate employs several real estate brokers to effect
a sale of his property, the broker whose efforts actually bring about
the sale is the one who is entitled to the commission for a sale,
provided the owner acts in good faith.

2.  Brokers, § 37*—*necessity of showing procuring cause of sale.*
Where several brokers are employed to procure a purchaser for
real estate and one of them brings an action for commissions,
he not only must prove that he commenced negotiations with a
party who subsequently purchased the property but, in order to
recover, must also show by a preponderance of the evidence that
he actually brought about a consummation of the sale, or was pre-
vented from so doing by the fraud, procurement or misconduct or
fault of the owner.

3.  Brokers, § 90*—*evidence insufficient to show procuring cause
of sale.*   In an action for real estate commissions, evidence *held*
insufficient to show that a broker "actually brought about a con-
summation of the sale."

4.  Brokers, § 54*—*evidence held insufficient to show bad faith
in owner.*   Where a broker sought to recover commissions for
effecting a sale of real estate, evidence *held* insufficient to show
that the owner acted in bad faith in selling the property through
another agent, such as to entitle each broker to a commission.